159 P.2d 768

## STATE v. MELENDREZ.

No. 4886.

Supreme Court of New Mexico.

May 15, 1945.

C. C. Royall, of Silver City, for appellant.

C. C: McCulloh, Atty. Gen., and Thomas C. McCarty, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

The defendant was tried by a jury and convicted of "Assault With Intent To Murder". The information of the district attorney on which the trial proceeded presented two counts; the first being "Assault With Intent To Murder", and the second, "Assault with Intent to Maim.", both under Sec. 41-606, N.M.S.A.1941 Comp. At the conclusion of the trial the court required the district attorney to elect which of the said counts was to be submitted to the jury, and the district attorney elected to stand on the first count of the information charging "Assault With Intent To Murder." The defendant adequately raised the question that there does not exist under the laws of the State of New Mexico the offense of assault with intent to murder under said Sec. 41-606 of the 1941 Comp., asserting that said section had been changed and superseded by Sec. 41-607 of said compilation establishing the offense of "Assault with intent to kill" and providing penalties therefor and that the offense of "Assault with intent to murder" under Sec. 41-606 was repealed.

The defendant also raised the question that no preliminary hearing upon proper complaint was ever held on the charge of "Assault With Intent To Murder" and that the filing by the district attorney of such charge was unauthorized and improper. The objections so raised by the defendant were overruled by the court and the case is before us on two assignments of error as follows:

"I. The court erred in holding that the part of Sec. 41-606 making 'Assault with intent to murder' a crime was still in force and effect, and not repealed by Sec. 41-607, changing the offense to 'Assault with intent to kill'.

"II. The court erred in holding that a sufficient preliminary examination on the charge of 'Assault with intent to murder' was had and in not dismissing the Information for that reason."

The defendant had been arrested on a warrant issued by a justice of the peace charging him with "Assault With Intent to Kill" and based on a complaint which had been made in the court of the said justice of the peace charging the defendant with "Assault With Intent to Kill". The defendant was brought before the justice of the peace and entered a plea of "Not guilty". On the day set for the preliminary examination the district attorney appeared for the state and asked that the charge be changed to "Assault With Intent to Murder and/or Maim". The complaint was not so changed and no new or further complaint was made and filed against the defendant; the justice of the peace proceeded with a preliminary examination and at the conclusion thereof held the defendant to the district court and issued a commitment against him holding him on a charge of "Assault With Intent to Murder and Maim." The district attorney thereafter filed his information, charging the defendant in count I with "Assault With Intent to Murder" and in count II, "Assault With Intent to Maim." The district court held against the contentions of the defendant and to the effect that Sec. 41-606 of the 1941 Comp. had not been repealed and is still in force and effect, and that a sufficient preliminary examination was had and held to authorize the district attorney to file the information involved in the case at bar.

Sec. 41-606 was enacted substantially in its present form in the Laws of 1853–54. The only changes which have been made are that the compilers of the 1915 Code substituted the words "state penitentiary" for the words "county jail or territorial prison." By the Laws of 1921, Ch. 65, the legislature changed the penalty by making the maximum term of imprisonment 25 years instead of the former maximum penalty of 5 years.

The legislature in 1929 adopted Ch. 44 of the laws of that session entitled: "An Act Defining the Crime of Assault With Intent to Kill and Prescribing Punishment Therefor."

Section I thereof being as follows: "If any person shall assault another, with intent to kill such person, he shall be punished by imprisonment in the State Penitentiary for not more than twenty-five (25) years, nor less than one (1) year, or by fine not exceeding One Thousand Dollars ($1,000.00), or by both such fine and imprisonment in the discretion of the court."

Sec. 2. contained nothing more than the emergency clause. This enactment is carried forward as Sec. 41-607, Comp.1941. Said Ch. 44, L.1929, did not purport to repeal any other laws of the state. The absence of a repealing clause in the later enactment is not determinative but is a circumstance which may be considered in connection with other aids to statutory construction. Among these aids are the following: "Where two statutes have the same object and relate to the same subject, if the later act is repugnant to the former the former is, to the extent of the repugnancy, repealed by

implication, even in the absence of the repealing clause in the later act." See Baca v. Board of Com'rs of Bernalillo County, 10 N.M. 438, 62 P. 979.

In State v. Romero, 19 N.M. 1, 140 P. 1069, it was decided: "Repeals by implication are not favored, but will be declared by the courts in cases where 'the last statute is so broad in its terms and so clear and explicit in its words as to show that it was intended to cover the whole subject, and therefore to displace the prior statute.'"

For other authorities on implied repeals see Levers v. Houston, 49 N.M. 169, 159 P.2d 761.

█ Appellant's argument would be more persuasive if there were no distinguishing features between the offenses of assault with intent to murder, and assault with intent to kill. That distinguishing features do exist see 40 C.J.S., Homicide, § 73, where it is said:

"*Distinguished from assault with intent to kill.*

"There is a well recognized distinction between an assault with intent to murder and an assault with intent to kill. Malice is a necessary element to constitute an assault with intent to murder but it is absent in an assault with intent to kill or commit manslaughter, or, as it is said, the assault with intent to kill may be committed without malice. If malice is lacking and yet the assault is unlawful, the crime committed is of a lower degree than assault with intent to murder."

See also 1941 Comp. Sec. 42-641 (Trial Court Rule 35-4446 applicable to Criminal Procedure) which sets forth forms which may be used in charging offenses, where appears the following: "Assault With Intent.—A.B. assaulted C.D. with intent to murder him, (or kill, or rob, or maim him as the case may be)."

This shows an understanding that assault with intent to murder and assault with intent to kill are not identical offenses.

█ That the compilers of the 1929 Compilation carried the two sections into that Compilation as 35-602 and 35-605, and the Compilation Commission of 1941 carried the two enactments forward in that compilation as Secs. 41-606 and 41-607 of that compilation are circumstances of some weight against appellant's contention.

█ Appellant calls attention to the fact that assault with intent to kill is an offense generally regarded as of less degree than assault with intent to murder, and yet the penalty prescribed for a violation of 41-607 (Assault With Intent to Kill) may in the discretion of the court be more severe than the penalty under Sec. 41-606 (Assault With Intent to Murder). Appellant argues: "The Legislature has the right, of course, to prescribe a more severe penalty for assault with intent to kill than would result had the intent been consummated and the victim killed, but it does not seem reasonable to suppose that the Legislature would pass a new act creating a new offense which would be an offense of lesser degree and

then voluntarily or negligently prescribe a far more severe penalty for the offense of assault with intent to kill than prescribed by the statute for the offense of killing under like circumstances. It seems inescapable that this was a new enactment to take the place of the old statute and to include therein assault with intent to kill and increase the penalty, and that the old statute is repealed by implication, and that now our only statute with reference to assault with intent to kill in all degrees is the 1929 enactment, Sec. 41-607."

That there is an anomaly here may be recognized, and yet, knowing as we do that anomalies frequently appear in legislative enactments, due perhaps to lack of exercise of care in surveying previous legislation, this one does not persuade us to appellant's view in the face of other considerations pointing strongly the other way.

We conclude that appellant's assignment of error No. I is without merit.

The appellant's assignment of error No. II presents a question which is not entirely free from difficulty.

The appellant contends that under our Constitution, Art. 2, Sec. 14, and our statutes, the information filed by the district attorney must substantially charge the crime stated in the complaint filed with the justice of the peace or other magistrate authorized to conduct preliminary examinations as the basis for such examinations, or one which is included or embraced within it, and further contends that in case the crime charged in the information is not the one stated in the complaint filed in the magistrate's court or one included therein, the district court cannot over the objection of the defendant, legally proceed to try him for the offense charged in the information filed by the district attorney.

To support his contention counsel for appellant cites State v. Second District Court, 36 Utah 396, 104 P. 282. He might have also added State v. Pay, 45 Utah 411, 146 P. 300, Ann.Cas.1917E, 173, which is an interesting and able opinion supporting his view. Appellant also cites Williams v. State, 6 Okl.Cr. 373, 118 P. 1006, 1008. It may be well at this point to advert to the fact that according to the notes to the text in 42 C.J.S., Indictments and Informations, § 73, cited post, the Oklahoma decisions are in distinct conflict.

Upon the other hand, the State contends that the magistrate before whom the original complaint is filed may require the accused to appear in the district court for trial for any offense of which the magistrate, from the evidence adduced, finds there is probable cause to believe the accused guilty whether such offense was charged in the complaint filed in the magistrate's court or not. To support their contention counsel for the state cite and rely upon 8 R.C.L. § 69 "Criminal Law" which is the same as 14 Am.Jur., Criminal Law, § 247 from which we quote: "Right to Hold for Charge Not Stated in

Complaint.—A person who is brought before an examining magistrate may be bound over to answer any crime that the preliminary examination may disclose, notwithstanding the charge on which he is held is not the one for which he was arrested; and the accused cannot be heard to say that he was not given a preliminary examination, for he was bound to take notice of the nature and character of the offense charged against him from the evidence introduced at the examination as well as from the papers in the case. In some jurisdictions the complaint would be amended or a new one made to conform to the proof."

And counsel for the state quote also from Duke v. State, 49 Ariz. 93, 64 P.2d 1033, 1034, as follows: "It is the law of Arizona that when a criminal complaint is filed before a justice court, regardless of the particular offense charged by the complaint, if it appears that any felony has been committed, it is the duty of the magistrate to hold the accused to answer to the superior court, and state in the commitment the crime for which he is held to answer, and the information filed by the county attorney must be based upon the crime set forth in the commitment, *regardless of the complaint.*" (Emphasis supplied.)

We find the question discussed in 42 C.J.S., Indictments and Informations, § 73, p. 932 et seq. It appears that there are three views, influenced no doubt by the statutes of the various jurisdictions.

1. The information must conform to the preliminary proceedings and charge an offense which is substantially the same as, or which is included in, that disclosed by the preliminary examination.

2. On the other hand, some authorities require the information to conform with the complaint filed in the magistrate's court.

3. Still other authorities require the information to conform with the commitment or order holding the accused to answer.

The student will find interesting discussions of the "Power of Prosecutor to Charge in Information Offenses Other Than Those for Which Accused Has Been Held to Answer by Committing Magistrate." in Vol 19, California Law Review, page 330 et seq. and 645 et seq., and in 18 California Law Review, page 324. In the last-mentioned of these articles it is pointed out that the criticism that the California statute allowing the prosecutor to charge any offense shown by the commitment or by the evidence adduced at the preliminary examination was unfair and lacking in due process of law, must be held without merit. "In view of the decision of the United States Supreme Court in Lem Woon v. Oregon, 1913, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340, where it was held that the constitutional provision of Oregon (later amended so as to prohibit prosecution for felonies except on presentment and indictment by a grand jury) which permitted the prosecuting attorney to file an information on his own

affidavit of probable cause, without providing for any examination or commitment by a magistrate, was valid. If a state may, consistently with the due process clause, dispense with a preliminary examination entirely, it is difficult to see how a statute permitting the prosecutor to charge any offense shown by the evidence taken before the magistrate to have been committed, can be held invalid on this ground."

The article in Vol. 19, California Law Review 645, shows that the California courts upheld the constitutionality of such .statute.

We mention these matters to bring out that since Art. 2, Sec. 14, of our Constitution does not define what kind of a preliminary examination must precede the filing of an information by the district attorney or the attorney general, the real question is whether the preliminary examination authorized by statutes, as supplemented by the facts as to the kind of a preliminary examination which was held, is sufficient to afford due process of law as a condition preliminary to the exercise of the power vested in the district attorney and attorney general. There is much other interesting discussion in the articles cited supra.

■■ From a consideration of the foregoing text and notes thereto, and cases cited and law periodical comments, we think the C.J.S. view numbered 3, supra, is the more reasonable and acceptable view under our statutes, and without expressing an opinion as to whether some other de-gree of conformity between the preliminary proceedings and the information will suffice, we hold that on the present record, where the crime charged in the complaint in the magistrate's court is kindred to that to which the accused is held to answer in a preliminary examination otherwise sufficient, and the information is in substantial accord with the magistrate's commitment, the district court committed no reversible error in overruling the legal exceptions to the proceedings mentioned in the early part of this opinion.

■ It must be assumed that when the constitutional amendment was proposed in 1923 and adopted at the election held November 4, 1924, providing that punishment of capital, felonious or infamous crimes might be presented by information filed by the district attorney or the attorney general or their deputies, provided the person informed against had previously had a preliminary examination before an examining magistrate, the preliminary examination and the relation of the state's attorneys thereto were understood to be such as were then in vogue under existing laws of the state. See Chase v. Lujan, 48 N.M. 261, 149 P.2d 1003.

In considering the state of the law at the time of the adoption of the amendment, our citations will for convenience be made to the 1915 code as containing the statutes then existing and remaining in force at the time of the amendment.

Sec. 3260 provided that whenever complaint was made to a judge or justice of the peace that a criminal offense had been

committed, it was the duty of the magistrate to examine the complainant and any witnesses who might be introduced by him and that if it appear on such examination that "any crime" had been committed, the magistrate must issue a warrant commanding that the accused be brought before the magistrate to be dealt with according to law. It is not stated that the complaint referred to as initiating the proceedings shall be in writing, but assuming that such is the case there is no requirement that a new complaint be filed after the arrest is made and the accused is brought before the magistrate. The inference is to the contrary.

Sec. 3263 provides: "If, upon the examination of the whole matter, it appears to the magistrate that no offense has been committed by any person, or that there is no probable cause for charging the prisoner therewith, he shall discharge him; but if it appear that *an* offense has been committed, the punishment of which is not within his jurisdiction, and that there is probable cause to believe the prisoner guilty thereof, the magistrate shall, by recognizance, summon the prosecutor and all material witnesses against the prisoner, to appear and testify before the court having cognizance of such offense, on the first day of the next term thereof, and not to depart from such court without leave." (Emphasis supplied.)

From these and other provisions the inference is that if from the evidence it appears to the magistrate that an offense has been committed by any person, the punishment of which is within the jurisdiction of the magistrate, a duty may arise to procure the filing of a charge against the accused, but if it appear that an offense has been committed, the punishment of which is not within the jurisdiction of the magistrate as a trial judge, and there is probable cause to believe the prisoner guilty thereof, the magistrate, without the necessity of further complaint, or further preliminary examination, shall commit or bail the accused to appear at the next term of the district court of his county. Secs. 3264, 3265, 3266. In view of the phrase employed in Sec. 3260 "if it appear on such examination that *any* crime has been committed", and the use of the phrase in Sec. 3263, "but if it appear that *an* offense has been committed," it would be permissible to conclude that the words *"an* offense" mean *"any* offense."

■ Since Sec. 3263 requires the magistrate to summon by recognizance the prosecutor and all material witnesses against the prisoner to appear and testify before the court having cognizance of "such offense", on the first day of the next term thereof, the inference is plain that the commitment must name the offense found by the magistrate as a result of the preliminary examination to have been committed by the prisoner. The magistrate must have found out from the entire examination and not from the complaint alone what offense had been committed by the prisoner so as to determine whether such offense is one the punishment of which is within his jurisdiction

and also whether or not such offense is bailable. Secs. 3264, 3265.

Since it must be presumed that the magistrate will fairly perform his duty, it must be assumed that the prisoner has had a preliminary examination adequate to the result set forth in the order of the commitment. If the district attorney's information charges the offense described in the order of commitment, how can it be said that the person informed against has not had a preliminary examination?

In 31 C.J., Indictments and Informations, § 140, which is a forerunner of the C.J.S. text quoted supra, it is said: "It is held that an information framed according to the facts developed at the preliminary examination need not correspond with the complaint serving as the basis for the warrant on which accused was arrested."

And note 54 to this text cites cases and also gives a reason for the rule as follows: "'The complaint served merely as the basis for a warrant, and its function was completely exhausted when the warrant on which the defendant was arrested was issued. An information is framed according to the facts developed at the preliminary examination, and no rule of law requires it to correspond to the complaint.' State v. Wisdom, 99 Kan. 802, 803, 162 P. 1174."

Sec. 3261 provides that the evidence taken before the examining magistrate in preliminary examinations shall be reduced to writing and forwarded to the clerk of the district court. At the time of the enactment the purpose of such transcript of the evidence was to inform the district attorney and to enlighten the judgment of the grand jury in determining whether an indictment would be presented. It now serves the additional purpose of enlightening the judgment of the district attorney and the attorney general as to what, if any, information shall be filed. Whether it could be reasonably contended that the district attorney or the attorney general might file an information charging an offense not named in the commitment but supported by the evidence thus appearing to have been adduced at the preliminary examination is a question we do not decide.

In the article in 18 Calif.Law Review it is suggested that there must be some similarity between the offense for which the accused was committed and the offense described in the information, stating, "But the prosecutor cannot charge rape when the committing order charges murder. This qualification allows the prosecutor to vary the charge in minor details to meet all possible evidence that may be adduced at the trial. For a very clear statement of the distinction see Payne v. State, 1924, 30 Okl.Cr. 218, 235 P. 558, 559."

In the case at bar the offense stated in the complaint preceding the preliminary examination (assault with intent to kill) and that stated in the information (assault with intent to murder) are of the same general class and might arise out of the same transaction, and the offense stated

in the information is identical with that stated in the order of commitment, so we are not called upon to decide the interesting question last above suggested, as for instance where the complaint upon which the prisoner is brought before the magistrate charges arson, and the prisoner is committed for the crime of kidnaping a child.

■ The provision of the constitution under review which permits the district attorney and the attorney general to present felonious crimes by information does not require the attendance of these officials upon preliminary examinations. Nor are they so required by statute. Upon approaching terms of court these officials are provided with information as to the results of preliminary examinations as evidenced by the orders of commitment, perhaps by many magistrates over the State. Their judgment is invoked as to whether informations shall be filed, by the proceedings in the preliminary examinations which include the complaint, the transcript of proceedings at the hearing, and the decision of the magistrate as reflected in his commitment and we do not think the decision of the prosecuting officers in the matter of the charge to be stated in information filed by them is limited by the single factor of the charge set forth in the complaint filed in the preliminary proceedings. As we have seen, the complaint may have charged even a misdemeanor only and the investigation may disclose that a felony has been committed. If the examining magistrate is not limited in his investiga-

tion and subsequent proceedings and decision to the exact charge stated in the complaint, why should the district attorney or attorney general be cramped into such narrow quarters. See Fertig v. State, 14 Ariz. 540, 133 P. 99, for an interesting discussion of the view we adopted. And see State v. Pigg, 80 Kan. 481, 103 P. 121, 18 Ann.Cas. 521, where the purpose of a preliminary examination is defined as: "(1) To inquire concerning the commission of crime and the connection of the accused with it, in order that he may be informed of the nature and character of the crime charged against him, and, if there be probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial; (2) to perpetuate testimony; (3) to determine the amount of bail which will probably secure the attendance of the accused to answer the charge. The right of the state to introduce evidence at a preliminary examination cannot be defeated by the accused waiving an examination."

Reading this definition and the discussion thereof suggests that the Kansas Supreme Court was thus aided in reaching a different conclusion from that arrived at in State v. Pay, supra, the Kansas court holding that it is well settled that if it appear on the examination that the defendant is guilty of a public offense other than that charged in the warrant, he may be bound over for that offense.

From all of the foregoing we conclude that the defendant was not held to answer for the offense charged in the in-

formation without due process of law nor without adequate preliminary examination, and that the district court committed no error, and that the judgment should be affirmed, and it is so ordered.

MABRY, C. J., and SADLER, BRICE, and LUJAN, JJ., concur.