**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:  May 21, 2014

Docket No. 32,235

STATE OF NEW MEXICO,

          Plaintiff-Appellee,

v.

BRIAN M. DORAIS,

          Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Stephen D. Pfeffer, District Judge

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Dan Cron Law Firm, P.C.
Kitren Fischer
Dan Cron
Santa Fe, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     Brian Dorais (Defendant) was arrested in 2006 for driving under the influence of intoxicating liquor and/or drugs.  Convicted after a jury trial in magistrate court, he timely appealed to the district court.  After a trial de novo, he was convicted again and, in May 2008, sentenced to ninety days of incarceration and five years of probation.  Defendant did not file a notice of appeal from the 2008 judgment.  Four years later, Defendant was arrested again and the State sought to revoke his probation.  After a hearing, however, the parties

1

agreed that Defendant should have originally been sentenced to only three years of probation. As a result, the State dismissed the motion for revocation of probation and the district court entered a "Stipulated Corrected Sentence" reflecting a probation period of three years. Defendant then filed a notice of appeal from the Stipulated Corrected Sentence. Defendant now argues that his constitutional right to confront witnesses was violated in his district court trial. He also argues that he was denied his right to a speedy trial and that Rule 6-506(B) NMRA—the "six month rule"—was violated.

**{2}** The State makes a number of arguments to the effect that the district court lacked jurisdiction to enter the Stipulated Corrected Sentence and that this Court lacks jurisdiction to hear this appeal. We do not address these arguments because we conclude that the *Duran* presumption permits us to review Defendant's claims of error in the lower courts. We affirm the district court's denial of Defendant's motions to dismiss on speedy trial and six month rule grounds. But, concluding that Defendant's confrontation rights were violated, we reverse and remand for a new trial.

## I.    DISCUSSION

### A.    This Court has Jurisdiction to Hear Defendant's Appeal

**{3}** Before we address Defendant's challenges to his conviction, we address the State's contention that this Court lacks jurisdiction to hear the appeal. The State's argument is based on the somewhat convoluted procedural history behind the appeal. Hence, we first outline that history.

**{4}** The first trial was held in magistrate court in August 2007. The second trial was held four months later in district court. At the sentencing hearing, the district court orally stated that it would sentence Defendant to thirty days in jail and three years of probation, but when the judgment and sentence was filed a month later, it reflected a sentence of ninety days in jail and five years of probation. No notice of appeal or affidavit of waiver of appeal was filed at that point. *See* Rule 5-702(B) NMRA ("defense counsel shall . . . file with the court . . . (1) a notice of appeal . . .; or (2) an affidavit . . . signed and sworn to by defendant and witnessed by counsel stating defendant's decision not to appeal").

**{5}** Almost four years later, Defendant was arrested for driving while intoxicated and the State filed a motion to revoke probation. Defendant denied the probation violation and argued that the judgment and sentence did not reflect the district court's oral sentence of three years of probation. The district court scheduled a hearing for April 30, 2012. On the date of the hearing, however, the State dismissed the probation violation, stating that "[t]he probationary period for this matter has expired, and the act for which the State filed the motion to revoke probation . . . was committed subsequent to the expiration of probation." The same day, the district court issued an order of release and a "Stipulated Corrected Sentence." The Stipulated Corrected Sentence was substantially the same as the original judgment and sentence, except that the term of incarceration was thirty days and the period

2

of probation was three years, consistent with the district court's oral sentence four years earlier. The district court also remanded the case to the magistrate court "with instructions to close the file on this matter[,]" stating that "[t]he probationary time has expired on the sentence passed by this [c]ourt in this matter." Defendant filed a notice of appeal to the Court of Appeals within thirty days of the entry of the Stipulated Corrected Sentence.

**{6}** The State focuses on the fact that Defendant appealed from the Stipulated Corrected Sentence entered four years after the original judgment and argues that this Court lacks jurisdiction over the appeal for four reasons. First, the district court itself lacked jurisdiction to issue the Stipulated Corrected Sentence under the rules of criminal procedure and therefore that action was void. *See* Rule 5-801(A), (B) NMRA (stating the rules for correction of an illegal sentence and modification of a sentence); *State v. Lucero*, 2001-NMSC-024, ¶ 7, 130 N.M. 676, 30 P.3d 365 (stating that the "time requirement for the filing of a motion to modify a sentence is jurisdictional"). Second, appeal of the Stipulated Corrected Sentence is moot "because Defendant has fully served his term of incarceration and probation regardless of [which] judgment and sentence . . . controls." Third, the Stipulated Corrected Sentence did not render Defendant an aggrieved party because Defendant was not harmed or prejudiced by the corrected sentence. Fourth, neither the district court's exercise of personal jurisdiction over Defendant nor any error in the district court renders an appeal from the original judgment and sentence timely. These arguments depend, for the most part, on analysis of the rules governing modification of sentences under Rule 5-801 as well as New Mexico case law evincing an interest in finality and clarity of judgments. *See, e.g.*, *Montoya v. Ulibarri*, 2007-NMSC-035, ¶ 29, 142 N.M. 89, 163 P.3d 476 (recognizing the public interest in finality of judgments); *State v. Soutar*, 2012-NMCA-024, ¶ 13, 272 P.3d 154 (stating that an oral sentence is not a final order); Rule 5-801(A), (B). We need not enter the thicket presented by these arguments, however, because we conclude that the presumption of ineffective assistance of counsel set out in *State v. Duran* permits this Court to address the merits of Defendant's appeal. 1986-NMCA-125, 105 N.M. 231, 731 P.2d 374.

**{7}** In *Duran*, this Court created a conclusive presumption of ineffective assistance of counsel "where defense counsel fails to timely file either a notice of appeal or an affidavit of waiver of appeal [as] required by [Rule 5-702(B)]." *Duran*, 1986-NMCA-125, ¶ 3. When the presumption applies, this Court may hear an appeal on the merits notwithstanding the untimely filing of the notice of appeal. *Id.* ¶ 6. Since *Duran*, the presumption has been applied "routinely" to reach the merits of untimely appeals. *State v. Vigil*, 2014-NMCA-__, ___ P.3d ___, ¶ 7 (No. 32,166, Mar. 12, 2014). As noted, Defendant here filed neither an appeal nor an affidavit of waiver after the original judgment and sentence was entered. Nor did Defendant's counsel file an affidavit stating that Defendant had been advised of his right to appeal and refused to file a notice of appeal or affidavit of waiver, which would have prevented a conclusion that the attorney was ineffective. *See Duran*, 1986-NMCA-125, ¶ 4 (stating that an attorney may file an affidavit to avoid being "faced with a 'Hobson's choice' of filing a frivolous appeal or facing the consequences of being labeled as 'ineffective' "). Therefore, the essential conditions for applying the *Duran* presumption

have been met. But does the presumption still apply after four years of inaction by Defendant? We conclude that it does for three reasons.

**{8}** The first and foremost reason that the passage of time alone does not prevent application of the *Duran* presumption is based on the fundamental premise of that case: that the rights implicated by the presumption—the right to appeal and the right to effective assistance of counsel—protect a defendant's fundamental liberty interest in a fair trial. *See State v. Leon*, 2013-NMCA-011, ¶ 17, 292 P.3d 493 (stating that the "guiding factor" behind cases extending the *Duran* presumption is the presence of a "fundamental liberty interest, in combination with circumstances in which a defendant has not waived his right to appeal"). This interest is no less significant after the deadline for appeal than it was before the deadline, nor does it diminish over time. *Cf. State v. Romero*, 1966-NMSC-126, ¶ 24, 76 N.M. 449, 415 P.2d 837 ("It is only logical that a void conviction cannot be vitalized by the lapse of time." (discussing timing requirements for Rule 1-060(B) NMRA motions for relief from judgment)).

**{9}** Second, in adopting the conclusive presumption, the *Duran* court declined the state's invitation to set an "outside time limit" on application of the presumption. 1986-NMCA-125, ¶¶ 5, 6 (choosing not to adopt an outside time limit on the presumption pursuant to the State's argument). In addition, the court noted that "there have been cases reinstated on our docket by the federal courts or by our [S]upreme [C]ourt because defendants have, in factual hearings held years after the appeal should have been taken, established their entitlement to delayed appeals. These cases sometimes take years to reach us." *Id.* ¶ 5. Thus, the *Duran* holding—which has been "firmly rooted in this State's jurisprudence" for almost thirty years—itself contemplated the possibility of encompassing within the presumption appeals filed years beyond the deadline. *State v. Cannon*, 2014-NMCA-___, ¶ 9, ___ P.3d ___ (No. 32,127, Mar. 13, 2014).

**{10}** Third, concluding that the *Duran* presumption does not apply simply based on the number of years that have passed is akin to concluding that a defendant waived the right to appeal through inaction. This conclusion would be inconsistent with the principles governing waiver of constitutional rights, which are well developed in our case law. Although "[a] defendant may waive fundamental constitutional rights[,]" *State v. O'Neal*, 2009-NMCA-020, ¶¶ 11-12, 145 N.M. 604, 203 P.3d 135, any waiver of those rights must be done knowingly, intelligently, and voluntarily. *See State v. Padilla*, 2002-NMSC-016, ¶ 18, 132 N.M. 247, 46 P.3d 1247 (" 'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege' which must be made in a knowing and voluntary manner.' " (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938))). There must be evidence in the record demonstrating that a waiver of rights was voluntary and intelligent: "[A] knowing and voluntary waiver cannot be inferred from a silent record." *Id.* ¶ 19. And, it is the State's burden to demonstrate that the right was waived. *See State v. Boeglin*, 1983-NMCA-075, ¶ 24, 100 N.M. 127, 666 P.2d 1274 ("[T]he burden of proof to establish a waiver of a constitutional right rests upon the [s]tate."). Finally, "in the absence of a clear showing of waiver, this Court on appeal will indulge in every reasonable presumption

4

against the waiver of a fundamental constitutional right, and will not presume acquiescence in its loss." *State v. Rodriguez*, 2009-NMCA-090, ¶ 20, 146 N.M. 824, 215 P.3d 762 (internal quotation marks and citation omitted); *cf. State v. Mascarenas*, 1972-NMCA-106, ¶ 15, 84 N.M. 153, 500 P.2d 438 (stating that "[t]he concept of waiver by inaction has been criticized").

**{11}** It follows from these principles that waiver of the right to appeal cannot be inferred from mere inaction. Rather, there must be evidence that a defendant knew of his right to appeal and voluntarily gave it up. This concept is embodied in Rule 5-702(B)(2), which requires an affirmative statement of waiver in the absence of a notice of appeal. Furthermore, as recognized in *Duran*, should a defendant "neither authorize[] an appeal nor sign[] an affidavit of waiver[,]" an attorney may file his or her own affidavit to that effect to avoid being found ineffective, thus preventing application of the *Duran* presumption. 1986-NMCA-125, ¶ 4. Hence, an affidavit by an attorney stating that the defendant took no action after being advised of the right to appeal functions as evidence of that defendant's waiver of that right.

**{12}** Applying these principles here, it is clear that the State has not met its burden. In fact, the State does not explicitly address whether Defendant knowingly waived his right to appeal.[1] Instead, in the context of a different argument, it points to the fact that Defendant's counsel requested a recording of the sentencing hearing on the day that the judgment and sentence was entered in 2008 as evidence that Defendant was aware of the discrepancy between the oral sentence and original judgment and sentence shortly after the judgment was entered. To the extent we construe this assertion as a request to infer that Defendant knowingly failed to file an appeal, we conclude that the inference is too speculative to overcome the strong presumption against waiver of the right to appeal. *See Rodriguez*, 2009-NMCA-090, ¶ 20.

**{13}** We also note that the district court did not advise Defendant of his right to appeal at

---

[1]The State's only argument against the application of *Duran* is based on its assertion that the "presumption of ineffective assistance of counsel does not arise on second appeals that are not guaranteed as of right." The State's position is contrary to the holding of *Cannon*, in which this Court recently considered whether the presumption applied to untimely appeals from a de novo trial in district court after appeal of a magistrate court decision. 2014-NMCA-___, ¶ 1. Concluding that "a de novo trial in district court is subject to the same procedural rule that the *Duran* presumption was premised on—namely, Rule 5-702(B)[,]" the Court held that "it follows that the *Duran* presumption would apply to untimely notices of appeal from a de novo trial in district court." *Cannon*, 2014-NMCA-___, ¶ 5; *cf. State v. Carroll*, 2013-NMCA-___, ¶ 9 (No. 32,909, Oct. 21, 2013) (stating that "[NMSA 1978,] Section 39-3-3(A)(1) [(1972)] is intended to include a defendant's right to appeal a district court's review of an on-record metropolitan court decision."). Thus *Cannon* is conclusive of this argument.

the sentencing hearing. *See* Rule 5-702(A) ("At the time of imposing . . . sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal."). Although whether the district court advised a defendant of his or her right to appeal is not dispositive as to waiver, it is a factor that may be considered in determining whether the right was knowingly waived. *See Padilla*, 2002-NMSC-016, ¶¶ 18, 20 (stating, "To determine the validity of a waiver, a reviewing court must consider the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (internal quotation marks and citation omitted) and discussing the district court's failure to advise the defendant of his right to appeal in its analysis of whether the defendant knowingly waived that right). Here, in part because the advice was lacking, there is no evidence that Defendant was aware of his right to appeal the district court's judgment and sentence to this Court. There being no affidavit of waiver as required by Rule 5-702(B), nor an affidavit by Defendant's counsel, nor other evidence that Defendant knowingly and voluntarily waived his right to appeal, we conclude that the passage of four years after entry of the original judgment and sentence does not constitute a waiver of Defendant's right to appeal. Having concluded that the *Duran* presumption permits us to do so, we next address the merits of Defendant's appeal.

**B.      The District Court did not Err in Denying Defendant's Motions to Dismiss on Speedy Trial and Six Month Rule Grounds**

**{14}**      Defendant argues that his conviction should be reversed because his right to be tried in accordance with the six month rule and his right to a speedy trial were violated. *See* Rule 6-506(B)(1) (stating that "[t]he trial of a criminal citation or complaint shall be commenced within one hundred eighty-two (182) days after . . . the date of arraignment or the filing of a waiver of arraignment of the defendant[,]" or other triggering events); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"); N.M. Const. art. II, § 14 (same). We begin by outlining the events leading to Defendant's trial, then address the asserted six month rule and speedy trial violations in turn.

**{15}**      Defendant was charged by criminal complaint on June 5, 2006. He pled not guilty in magistrate court on June 29, 2006. The six month rule therefore required that trial occur no later than December 28, 2006. *See* Rule 6-506(B). A trial was scheduled for November 9, 2006, but Defendant appeared late and the magistrate court vacated the setting. Because Defendant was late, the magistrate court had him arrested for failure to appear, although the failure to appear charge was later dismissed by the magistrate court. A new trial was scheduled for January 2, 2007, but that setting was reset for January 30, 2007, because the courthouse was closed due to snow on January 2. Defendant asserts that he intended to enter into a plea agreement on January 30, 2007, but the parties did not agree to the terms. No plea agreement was entered and Defendant requested a continuance.

**{16}**      A new trial setting for March 27, 2007, was subsequently vacated and reset for May 7, 2007. Three days before trial, counsel for Defendant moved for a continuance, stating that "[t]he [d]efense now waives any speedy[]trial defense." After his motions for dismissal

6

based on violations of the six month rule and speedy trial rights were denied in the magistrate court, Defendant was convicted at a jury trial on August 13, 2007.

**{17}** Defendant timely appealed to the district court and renewed his motions to dismiss based on the previously-asserted violations of the six month rule and speedy trial rights. After a hearing, the district court denied both motions based on its conclusion that (1) arrest of Defendant on November 9, 2006, triggered a new six-month period in which to bring him to trial in magistrate court; and (2) Defendant waived adherence to the six month rule when he requested a continuance on January 30, 2007. *See* Rule 6-506(B)(5) (stating that "if the defendant is arrested for failure to appear, . . . the date of arrest or surrender of the defendant" is the triggering event for the six-month period in which to begin trial).

**{18}** On appeal, we review the district court's analysis of the six month rule de novo. *See State v. Rayburns*, 2008-NMCA-050, ¶ 7, 143 N.M. 803, 182 P.3d 786. In doing so, we assess the district court's findings of fact "with the deference of the substantial evidence standard." *Id.* Defendant first argues that the district court erred in concluding that his arrest at the November 9, 2007, trial restarted the six-month period in which to bring him to trial "[b]ecause [Defendant] did not willfully fail to appear[] [and, therefore,] the warrant was issued in error." But the rule under which the warrant was issued does not require that the bench warrant be based on a willful failure to appeal. *See* Rule 6-207(A) NMRA ("If any person who has been ordered by the magistrate judge to appear at a certain time and place . . . fails to appear at such specified time and place[,] . . . the court may issue a warrant for the person's arrest."). Instead, the mere fact of Defendant's absence at the appointed place and time permitted the magistrate court to issue the bench warrant and order Defendant arrested. Because the triggering event specified in the six month rule—arrest for failure to appear—is also unqualified in any way, once Defendant was arrested, the six-month clock began anew. *See* Rule 6-506(B)(5).

**{19}** Defendant's second argument challenges the district court's finding that Defendant waived application of the six month rule at the January 30, 2007, hearing. After review of the record, we conclude that the district court's finding is supported by substantial evidence. The motion for continuance filed after the January 30, 2007, hearing by defense counsel did not state explicitly that Defendant waived adherence to the rule. However, the State's witness testified that Defendant's counsel requested a continuance of the January 30, 2007, trial setting, which was granted by the magistrate court with the condition that Defendant waive the six month rule. The witness testified that Defendant's counsel agreed during the hearing to this condition. We will not second-guess the district court's resolution of this conflict. *See State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 ("It [is] for the [district] court as fact-finder to resolve any conflict in the [evidence] and to determine where the weight and credibility lay."). In sum, we conclude that Defendant's arrest on November 9, 2006, restarted the six-month period in which to initiate trial and that Defendant, through counsel, waived the application of the rule at the January 30, 2007, hearing. Denial of Defendant's motion to dismiss on six month rule grounds was therefore not improper.

7

**{20}**     We now turn to Defendant's allegation that his constitutional right to a speedy trial was violated based on the delay of fourteen months between his arrest and trial. "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. Whether a defendant has been deprived of the right requires a case-by-case analysis. *Id.* ¶ 11. Using the factors set out in *Barker v. Wingo*, 407 U.S. 514 (1972), courts must assess "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). On appeal, "we give deference to the [district] court's factual findings. Weighing and balancing the *Barker* factors is a legal determination that we review de novo." *State v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

**{21}**     The first factor—length of the delay—is both "a threshold inquiry that triggers the rest of the analysis and . . . part of the balancing test itself." *State v. Fierro*, 2012-NMCA-054, ¶ 35, 278 P.3d 541 (internal quotation marks and citation omitted). Thus, we determine first whether the fourteen-month delay is presumptively prejudicial. *Id.* ¶¶ 35-36. If so, we proceed to analyze the other *Barker* factors. *Id.* Here, the district court determined that this case was a simple one, and the parties do not dispute this finding. A delay of fourteen months is presumptively prejudicial in cases of this complexity. *See Salandre v. State*, 1991-NMSC-016, ¶ 22, 111 N.M. 422, 806 P.2d 562 (holding that a nine month delay is presumptively prejudicial for simple cases), *holding modified by Garza*, 2009-NMSC-038, ¶ 48 (revising the presumptively prejudicial benchmark for simple cases to twelve months).

**{22}**     Having concluded that the *Barker* inquiry is necessary, we would ordinarily proceed to a detailed examination of whether the length of delay, reasons for delay, and assertion of the right weigh in Defendant's favor. Where there is no evidence of prejudice caused by the delay, however, we need not assess these factors, because "the absence of prejudice outweighs other factors that may weigh in a defendant's favor." *State v. Brown*, 2003-NMCA-110, ¶ 17, 134 N.M. 356, 76 P.3d 1113. This is the case here.

**{23}**     There are "three interests under which we analyze prejudice to the defendant: . . . to prevent oppressive pretrial incarceration[,] . . . to minimize anxiety and concern of the accused[,] and . . . to limit the possibility that the defense will be impaired." *Maddox*, 2008-NMSC-062, ¶ 32 (quoting *Barker*, 407 U.S. at 532). "Although the [s]tate bears the ultimate burden of persuasion, [the d]efendant does bear the burden of production on this issue, and his failure to do so greatly reduces the [s]tate's burden." *State v. Urban*, 2004-NMSC-007, ¶ 18, 135 N.M. 279, 87 P.3d 1061. In addition, there must be a showing of a "nexus between the undue delay and the prejudice claimed." *Brown*, 2003-NMCA-110, ¶ 17 (internal quotation marks and citation omitted). Defendant argues that the delay in bringing him to trial (1) impaired his defense, and (2) caused him to "experience[] unusual hardship" and anxiety.

**{24}**     First, Defendant maintains that because of the delay, there was no video of the initial

traffic stop, and consequently, "[t]he jury was . . . left to rely on the impaired and faulty memory of the arresting officer." As support for his position, he points to the arresting officer's testimony about the video.

> Q.     And did you engage your video equipment at that time?

> A.     I believe I did, but I don't have a copy of the tape.

But this testimony tells us nothing about how the lack of the video was caused by the State's delay, or about how the video would have been important to Defendant's defense. *See id.* ¶ 17 (requiring a "nexus" between the delay and error); *State v. Todisco*, 2000-NMCA-064, ¶ 23, 129 N.M. 310, 6 P.3d 1032 (stating that the prejudice "must be substantial and demonstrable" (internal quotation marks and citation omitted)). There is no evidence that Defendant sought to use the video at trial but could not. We conclude that Defendant's assertions are too speculative to constitute evidence of prejudice. *See Brown*, 2003-NMCA-110, ¶ 20 (rejecting a defendant's argument as to prejudice as "conjecture"); *cf. Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

**{25}**     Second, Defendant argues that he experienced undue anxiety and hardship because he "was incarcerated at least three different times" and had to borrow money to pay over $5000 in bail for the failure to appear charge. But the penalties for the failure to appear charge are attributable to Defendant's own conduct, not to the State. In addition, Defendant fails to provide evidence tying the other periods of incarceration to delay on the State's part. *See Brown*, 2003-NMCA-110, ¶ 17 (requiring a "nexus" between the delay and error). "[B]ecause the record does not support a finding of prejudice to Defendant, we need not analyze the remaining factors." *Id.* ¶ 21. The district court did not err in denying Defendant's motion to dismiss on speedy trial grounds.

## C.     Defendant's Rights Under the Confrontation Clause Were Violated

**{26}**     Defendant next argues that his right to confront the witnesses against him at trial was violated. Both the federal and New Mexico constitutions provide that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14 ("the confrontation clause"). Defendant argues that it was improper to permit the State to admit a report of his blood alcohol content based on testimony by a State Laboratory Division (SLD) employee who did not analyze the blood sample. Thus, his argument is grounded in the United States Supreme Court's holding in *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713 (2011), in which the Court held that "[a]s a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness."

**{27}** As a preliminary matter, we address the State's argument that *Bullcoming* does not apply here because it was "issued long after Defendant's judgment of conviction became final." We disagree and therefore apply *Bullcoming* to conclude that Defendant's rights protected by the confrontation clause were violated.

**{28}** *Bullcoming* was decided in 2011, three years after the original judgment and sentence was filed in this case. The State, apparently assuming that *Bullcoming* announced a new rule, contends that it does not apply here because its holding is not retroactive. *See State v. Mascarenas*, 2000-NMSC-017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 ("An appellate court's consideration of whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a 'new rule.' "); *State v. Nunez*, 2000-NMSC-013, ¶ 114, 129 N.M. 63, 2 P.3d 264 ("[I]t seems apparent that a change of law by an appellate court will have no retroactive application to any case that is finalized before the date the court's decision is filed."). Defendant counters that *Bullcoming* did not announce a new rule and "merely reiterated that the principles set forth in *Melendez-Diaz* [*v. Massachusetts*] are and have always been the correct interpretation of the law." *See* 557 U.S. 305, 311 (2009). We do not address these arguments, because, even if we assume without deciding that *Bullcoming* announced a new rule and is not retroactive, *Bullcoming* applies here because Defendant's appeal was pending when *Bullcoming* was filed. We explain.

**{29}** "[A] change in the law generally applies to cases pending on direct appeal, as long as the issue was raised and preserved below." *Kersey v. Hatch*, 2010-NMSC-020, ¶ 19, 148 N.M. 381, 237 P.3d 683. When we apply the *Duran* presumption, we treat a late appeal as though it had been filed within the applicable deadline. *See State v. Leon*, 2013-NMCA-011, ¶ 20, 292 P.3d 493, *cert. quashed*, 2013-NMCERT-010, 313 P.3d 251 (stating that, as a result of applying the *Duran* presumption, the Court would "consider his appeal as if timely filed"); *State v. Peppers*, 1990-NMCA-057, ¶ 23, 110 N.M. 393, 796 P.2d 614 (stating that as a result of the *Duran* presumption, the Court would "treat defendant's appeal as if the notice had been filed in a timely fashion"); Rule 12-201(A) NMRA. Hence, we treat Defendant's appeal as though it had been filed in June 2008, which means that we also consider it pending at the time *Bullcoming* was decided.

**{30}** Treating Defendant's appeal this way is consistent with the principle underlying *Duran*—that a defendant should not be denied an appeal by his or her attorney's incompetence. *See Duran*, 1986-NMCA-125, ¶ 3 (recognizing the holding of *Evitts v. Lucey*, 469 U.S. 387, 389-400 (1985) "to the effect that criminal defendants are not to be deprived of an appeal as of right where a procedural defect results from ineffective assistance of counsel on appeal."). If we did not treat an untimely appeal as "relating back" to the appeal deadline date, defendants whose appeals we considered via the *Duran* presumption would be denied the benefit of cases decided between that date and the actual date of appeal, while defendants who timely filed their appeals would not. This anomalous result is contrary to the very foundation on which *Duran* is based.

10

**{31}** Having concluded that *Bullcoming* applies, we turn to the merits of Defendant's confrontation clause claim. Under that case, a testimonial statement "may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming*, 131 S. Ct. at 2712-13. Consistent with *Melendez-Diaz* and its progeny, the parties do not dispute that the SLD blood alcohol content report was testimonial. U.S. at 311; *see State v. Bullcoming*, 2010-NMSC-007, ¶ 18, 147 N.M. 487, 226 P.3d 1 *rev'd on other grounds by Bullcoming,* 131 S. Ct. at 2713. In addition, the State does not argue that the analyst who conducted the test and certified the results was unavailable or that Defendant had an opportunity to confront him before trial.

**{32}** Instead, the State argues that *Bullcoming* is inapposite because the testifying witness was a "supervising analyst." Relying on Justice Sotomayor's concurrence in *Bullcoming*, the State argues that there is no confrontation clause violation where the testifying witness is "a supervisor who observed an analyst conducting a test [and] testified about the results or a report about such results." *Bullcoming*, 131 S. Ct. at 2722 (Sotomayor, J., concurring). But there is no evidence that the testifying witness observed the conduct of the test. Indeed, the facts here are nearly exactly like those in *Bullcoming*, to wit: (1) a certified report showing Defendant's blood alcohol content was admitted into evidence, (2) the analyst who certified the results of the blood testing did not testify, (3) another SLD employee—who reviewed the analyst's documentation but did not observe the testing—testified, including about the results of the test. *See Bullcoming,* 131 S. Ct. at 2709-11. Discerning no material difference between the facts here and those in *Bullcoming*, we conclude that Defendant's right to confront the analyst whose certified statement was admitted into evidence was violated. We therefore reverse Defendant's conviction and remand this matter to the district court for a new trial. *See State v. Martinez*, 1996-NMCA-109, ¶ 21, 122 N.M. 476, 927 P.2d 31 (remanding for new trial where the defendant's confrontation right was violated).

## II.    CONCLUSION

**{33}** For the foregoing reasons, the district court's denial of Defendant's motions to dismiss for violation of the six month rule and speedy trial right is affirmed. Because Defendant's right to confront the SLD analyst who prepared the report admitted against him was violated, however, we reverse the conviction and remand for a new trial.

**{34}    IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____

**J. MILES HANISEE, Judge**