This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39108**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARTY CHAVEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Marty L. Chavez (Defendant) was convicted of aggravated driving while under the influence of intoxicating liquor or drugs (DWI) (refused testing) (8th Offense), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016); driving without insurance, contrary to NMSA 1978, Section 66-5-205 (2013); and open container (possession), contrary to NMSA 1978, Section 66-8-138(B) (2001). On appeal, Defendant argues that: (1) the admission of Defendant's toxicology report (State's

Exhibit 3) and the corresponding testimony by the State's expert witness violated the Confrontation Clause of the New Mexico and the United States Constitutions; and (2) insufficient evidence supports Defendant's aggravated DWI conviction. For the reasons that follow, we affirm.

## BACKGROUND

**{2}**     Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

## DISCUSSION

### I.     Confrontation Clause

### A.     The Expert Testimony

**{3}**     Defendant argues that his confrontation right was violated because the State's expert witness had no part in creating the report or testing the sample of blood provided by Defendant. The State argues that its expert's testimony is constitutionally sound because the expert came to independent conclusions based on his review of the underlying raw data. We agree with the State.

**{4}**     Under the Sixth Amendment to the United States Constitution, "every criminal defendant shall enjoy the right to be confronted with the witnesses against him." *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110 (omission, internal quotation marks, and citation omitted). The Confrontation Clause applies to witnesses against the accused who provide testimony to establish or prove some fact. *Id.* We review claimed violations of the confrontation right de novo. *Id.*

**{5}**     A defendant's right to confrontation is violated when an out-of-court statement that is testimonial is introduced against the accused at trial "'unless the witness who made the statement is unavailable, and the accused has had a prior opportunity to confront that witness.'" *State v. Dorais*, 2016-NMCA-049, ¶ 26, 370 P.3d 771 (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011)). "[T]he introduction of testimony through a substitute or surrogate witness attesting to [an] original analyst's report violate[s] the defendant's right to confrontation." *State v. Gonzales*, 2012-NMCA-034, ¶ 12, 274 P.3d 151 (citing *Bullcoming*, 564 U.S. at 652).

**{6}**     Following the United States Supreme Court's line of confrontation cases, beginning with *Crawford v. Washington*, 541 U.S. 36 (2004), our courts have made clear that the Confrontation Clause is not offended when "an expert who has analyzed the raw data generated by another analyst and who has formed independent conclusions based upon that analysis . . . testif[ies] as to those conclusions." *State v.*

*Huettl*, 2013-NMCA-038, ¶ 36, 305 P.3d 956; *see also State v. Navarette*, 2013-NMSC-003, ¶ 22, 294 P.3d 435 ("[A]n expert witness may express an independent opinion regarding his or her interpretation of raw data without offending the Confrontation Clause."). However, allowing a witness to parrot out-of-court testimonial statements from an unavailable witness in the guise of expert opinion would constitute an impermissible violation of the Confrontation Clause. *Huettl*, 2013-NMCA-038, ¶ 38.

**{7}** Thus, the issue before us is whether the State's expert witness reviewed the raw data generated by a colleague at the New Mexico State Scientific Laboratory (SLD) and formed an independent conclusion based on his review of the data or instead merely repeated out-of-court testimonial statements from an unavailable witness under the guise of an expert opinion.

**{8}** At trial, the State did not call the original analyst who tested Defendant's blood. Instead, the State called Mr. Martin Lindonbush, a forensic toxicology supervisor employed with SLD. During his testimony, Mr. Lindonbush explained what generally happens when SLD receives a blood sample for testing. Mr. Lindonbush stated that, in preparation for testifying, he reviewed all the documents in SLD's case file for this case, including the report (State's Exhibit 3) written by the original analyst measuring Defendant's blood alcohol concentration (BAC). Mr. Lindonbush was not employed by SLD when Defendant's blood was analyzed, and his BAC was measured.

**{9}** Mr. Lindonbush testified that, based on his review, the toxicology testing performed by the analyst, whose results were reported on State's Exhibit 3, was done properly, and Defendant's BAC was accurately measured. The district court then admitted State's Exhibit 3 into evidence. Once the district court admitted State's Exhibit 3, Mr. Lindonbush read from it the conclusion that Defendant's BAC was 0.21 grams per 100 milliliters. Mr. Lindonbush also testified that the blood samples were drawn three to four hours after police contact, and assuming that no alcohol had been consumed in the interim, the blood-alcohol level would drop over time.

**{10}** Next, the State asked Mr. Lindonbush, "Based on the raw data and the report, what independent conclusion did you determine?" Mr. Lindonbush testified that he "determined that [Defendant's] blood alcohol was substantial, that he [was] very intoxicated in the period between the incident and the time the samples were collected."

**{11}** Consequently, we conclude that Mr. Lindonbush's testimony did not merely parrot the conclusions from the SLD toxicology report but provided his independent conclusions based on his review of the underlying raw data. *See Huettl*, 2013-NMCA-038, ¶¶ 35-37 (observing that expert testimony based on raw data generated by another is permissible so long as the expert testifies to their own independently derived opinion). Similarly, we cannot conclude that Mr. Lindonbush was a substitute or surrogate witness because of these independent conclusions. *See Gonzales*, 2012-NMCA-034, ¶ 12. Thus, Mr. Lindonbush's testimony did not violate the Confrontation Clause.

**{12}** Next, we discuss whether the introduction of State's Exhibit 3 constituted harmless or reversible error.

## B.      The Toxicology Report

**{13}** The State concedes that the admission of State's Exhibit 3 violated the Confrontation Clause but argues that this error was harmless. We agree that the admission of State's Exhibit 3 was erroneous. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (concluding the Confrontation Clause was violated when the trial court admitted into evidence certificates of nontestifying laboratory analysts stating material seized from the defendant was cocaine). However, we still must determine whether the erroneous admission of State's Exhibit 3 was harmless. We conclude it was.

**{14}** "When an error is preserved, we review for harmless error, and our inquiry depends on whether the error was constitutional." *State v. Astorga*, 2015-NMSC-007, ¶ 42, 343 P.3d 1245. When the error is established as constitutional, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. *State v. Montoya*, 2014-NMSC-032, ¶ 49, 333 P.3d 935. A constitutional error is harmless only "when there is no reasonable *possibility* it affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (internal quotation marks and citation omitted). "[W]hen reviewing an error's role in the trial, courts may, depending upon the circumstances of the cases before them, examine the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was cumulative or instead introduced new facts." *Id.* ¶ 43 (alterations, internal quotation marks, and citation omitted).

**{15}** We conclude that Defendant preserved this issue because defense counsel objected to the introduction of State's Exhibit 3 at trial and that this is a constitutional error involving Defendant's confrontation rights. Thus, the State must prove that the error here was harmless beyond a reasonable doubt. In attempting to convince us that admission of State's Exhibit 3 was harmless, the State argues that the information contained in State's Exhibit 3 was cumulative of the information Mr. Lindonbush provided during his testimony. We agree and explain.

**{16}** At trial, Mr. Lindonbush was admitted as an expert in toxicology, analyzing blood and raw data reports. Mr. Lindonbush stated that he was familiar with State's Exhibit 3, then the State admitted State's Exhibit 3 through him. Once it was admitted, Mr. Lindonbush quoted its conclusion—that Defendant's BAC was "0.21 grams per 100 milliliters"—but he never told the jury what the per se legal limit is for a driver to be presumed to be intoxicated, only what Defendant's BAC[1] was. Mr. Lindonbush then

---

[1] This case is not a "per se" case under the DWI statute, where the state would attempt to prove that a defendant was presumed intoxicated because his BAC was at or above .08. Additionally, the jury was never informed of this per se level. No instruction to that effect was ever given to the jury. Consequently, the jury was only informed of Defendant's BAC, as reported in State's Exhibit 3. The jury was never told what that level of BAC meant or how to interpret Defendant's BAC *vis a vis* his intoxication and ability to drive a motor vehicle.

elaborated on his independent conclusions. From this measurement, Mr. Lindonbush hypothesized that Defendant's BAC would have been higher when police first encountered him. Mr. Lindonbush also testified that Defendant's BAC was "substantial" and that he would have been very intoxicated between the incident and the time the samples were collected. Thus, without Mr. Lindonbush's explanation, the information contained in State's Exhibit 3 is meaningless.

**{17}** Based on the above, we conclude that there is no reasonable possibility that State's Exhibit 3 alone affected the verdict. *See id.* ¶ 36. State's Exhibit 3 was not a crucial piece of evidence to the State's case because, without Mr. Lindonbush's testimony, this document is not easily interpreted. *See id.* ¶ 43 (considering the context of the error at trial). What's more, the erroneous admission of State's Exhibit 3 was cumulative of Mr. Lindonbush's conclusions and related testimony explaining these conclusions. *See id.* Thus, while the admission of State's Exhibit 3 was erroneous, its admission was harmless.

**{18}** Because we conclude that Mr. Lindonbush's testimony did not violate the Confrontation Clause and the error in admitting State's Exhibit 3 was harmless, we do not reach Defendant's sufficiency of the evidence argument.

**CONCLUSION**

**{19}** For the above reasons, we affirm.

**{20} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**